**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GEOVANNI RAMBERTO RAMIREZ-
TEJADA,

     Petitioner,

v.

MERRICK GARLAND,* Attorney General
of the United States,

     Respondent.

No. 20-9576
(Petition for Review)

_____

**ORDER AND JUDGMENT**
_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Geovanni Ramberto Ramirez-Tejada ("Petitioner") petitions for review from

the Board of Immigration Appeals's ("BIA's") denial of asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT").  Petitioner is not

_____

* On March 11, 2021, Merrick Garland became Attorney General of the United
States. Consequently, his name has been substituted for William P. Barr as
Respondent, per Fed. R. App. P. 43(c)(2).

** After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

entitled to asylum or withholding of removal because he has not shown a nexus between his membership in a particular social group and his fear of persecution. Further, the BIA's denial of CAT relief is supported by substantial evidence. Accordingly, exercising jurisdiction under 8 U.S.C. § 1252, we **DENY** the petition for review.

## I.    Background

Petitioner is a native and citizen of El Salvador.  In 2014, members of the MS-13 gang kidnapped, assaulted, and ransomed Petitioner in El Salvador.  After his release, Petitioner spoke with a Salvadoran police officer.  The Salvadoran police organized a sting operation with Petitioner's assistance.  The sting operation led to the arrest of one of the gang members, whom Petitioner identified as one of his kidnappers.  After the sting operation, MS-13 gang members sought out and threatened Petitioner, calling him a "rat" and threatening to "torture and dismember him."  AR at 57.  Petitioner moved several times within El Salvador but continued to receive threats from MS-13 gang members.  Petitioner also informed the Salvadoran police about these threats but was told that the police lacked the resources to follow up on his case; the police also recommended that Petitioner leave El Salvador. Petitioner fled El Salvador and entered the United States without valid entry documents.

Petitioner received a Notice to Appear in removal proceedings.  Petitioner admitted the factual allegations and conceded the charge contained in the Notice to Appear.  He also applied for asylum, withholding of removal, and protection under

2

CAT.  Following a hearing, an Immigration Judge ("IJ") denied Petitioner's application for relief and ordered Petitioner removed to El Salvador.  Petitioner timely appealed to the BIA.  The BIA affirmed the IJ's decision.  Petitioner then filed a timely petition for review in this court.

Petitioner presents three issues in his petition for review: (1) whether the BIA erred in denying asylum and withholding of removal by finding that Petitioner's proposed particular social group lacked particularity and social visibility; (2) whether the BIA erred in denying asylum and withholding of removal by finding that Petitioner failed to establish a nexus between his membership in a particular social group and his fear of persecution; and (3) whether the BIA erred in denying CAT relief by finding that the Salvadoran government would not acquiesce to Petitioner's torture.  *See* Pet'r's Br. at 2–3.

## II.     Asylum and Withholding of Removal

"On an asylum claim, we review the BIA's findings of fact under a substantial-evidence standard."  *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) (internal quotations and citations omitted).  "We review the BIA's legal decisions de novo, but we defer to the BIA's interpretation of ambiguous provisions of the [Immigration and Naturalization Act], and must accept the BIA's interpretation if it is reasonable."  *Id.* (internal quotations and citations omitted).

An alien is eligible for asylum if he or she is a "refugee" within the meaning of the Immigration and Naturalization Act.  *See* 8 U.S.C. § 1158(b)(1)(A).  An alien may qualify as a "refugee" if he or she is unable or unwilling to return to the country

3

of his or her nationality because of "persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42). A cognizable "particular social group" must have both "particularity" and "social visibility," also referred to as "social distinction." *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 648 (10th Cir. 2012). "[T]he victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Id.* at 646.

Petitioner asserts that he belongs to a particular social group described as "those who actively oppose gangs in El Salvador by agreeing to be participants in the prosecution of gang members." AR at 3. The BIA held that Petitioner's proposed particular social group "lack[ed] both particularity and social distinction." AR at 4. The BIA also held that Petitioner failed to establish "a nexus between any harm he may face from gangs in El Salvador and membership in his proposed social group." *Id.*

We decline to decide whether Petitioner established a cognizable particular social group. Even assuming the BIA erred in holding that Petitioner's proposed particular social group lacked particularity and social distinction, the BIA did not err in holding that Petitioner failed to establish the requisite nexus between his membership and fear of persecution. As the BIA concluded, Petitioner "has not shown he was or would be harmed on account of his membership in a social group, but rather that 'he was targeted by criminals because he posed a threat to their interest in avoiding prosecution.'" AR at 4 (quoting *Rodriguez-Leiva v. Holder*, 607 F. App'x 807, 810–11 (10th Cir. 2015) (unpublished)).

4

Petitioner's arguments to the contrary fall short. Petitioner asserts that he "submitted clear evidence that, after he provided information to law enforcement regarding the MS-13 gang member, he relocated out of fear for his life but was still identified and threatened by the MS-13 gang . . . ." Pet'r's Br. at 12. He also asserts that MS-13 gang members called him a "rat," and that he "knows that he is dealing with the MS-13 gang." *Id.* at 13. These facts do not establish the requisite nexus; to the contrary, they support the BIA's conclusion that Petitioner was singled out for reprisal.

Our decision in *Rivera-Barrientos* illustrates the flaw in Petitioner's argument. As we explained in *Rivera-Barrientos*, "we must distinguish between persecution based on social status, and an individualized reaction to the applicant based on [his or] her threat to the gang's interests." 666 F.3d at 653. In that case, we relied upon two contrasting examples provided by the BIA's decision in *Matter of C-A-*, 23 I. & N. Dec. 951 (BIA 2006):

> Were a situation to develop in which former police officers were targeted for persecution because of the fact of having served as police officers, a former police officer could conceivably demonstrate persecution based upon membership in a particular social group of former police officers. On the other hand, if a former police officer were singled out for reprisal, not because of his status as a former police officer, but because of his role in disrupting particular criminal activity, he would not be considered, without more, to have been targeted as a member of a particular social group.

*Rivera-Barrientos*, 666 F.3d at 653 (quoting *Matter of C-A-*, 23 I. & N. Dec. at 958–59).

Here, the fact that Petitioner was threatened by the same gang that he helped prosecute supports the BIA's conclusion that Petitioner was targeted because of his role in the sting operation, i.e., "because of his role in disrupting particular criminal activity." *Id.* The fact that Petitioner was called a "rat" also suggests that he was targeted because of his involvement in the sting operation—and not some general opposition to gang activity. Similarly, the fact that Petitioner identifies his persecutors as MS-13—and not some other gang he has no particular history with— indicates that the threats are retaliatory. In other words, Petitioner was not targeted because of a general opposition to "gangs in El Salvador" or because he was generally a "participant[] in the prosecution of gang members." AR at 3. Rather, Petitioner was singled out for reprisal by MS-13 because of specific actions he took against MS-13, including his assistance in prosecuting one of MS-13's members.[1]

Because Petitioner is not entitled to asylum, he is also not entitled to withholding of removal. *See Rodas-Orellana*, 780 F.3d at 987 ("Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim."); 8 U.S.C. § 1231(b)(3)(A) (threat to an alien's life or freedom because of the alien's "membership in a particular social group" may warrant withholding of removal).

---

[1] Petitioner also asserts that the Salvadoran police will not protect him from MS-13. Pet'r's Br. at 13. We do not doubt Petitioner's fear of future persecution. Petitioner has not, however, shown the requisite nexus between that fear and his membership in a particular social group.

### III. CAT Relief

We review a CAT order for substantial evidence. *Nasrallah v. Barr,* 140 S. Ct. 1683, 1688 (2020). Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 1692 (internal quotations omitted). To warrant relief under CAT, an applicant must show it is more likely than not he or she will be subject to torture in his or her country by, at the instigation of, or with the acquiescence of a public official or one acting in an official capacity. 8 C.F.R. §§ 1208.16–18. Acquiescence does not require "actual knowledge, or willful acceptance," but rather may be proven by "willful blindness." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013).

The BIA acknowledged that the Salvadoran police's refusal to protect Petitioner demonstrated the Salvadoran government's "difficulty combatting gang violence in [El Salvador]." AR at 5. The BIA concluded, however, that "the record shows that the [Salvadoran] government nonetheless has attempted to assist and protect the respondent with the resources available." *Id.* The BIA's conclusions are supported by substantial evidence. Although the record supports a credible fear of torture, the record does not show willful blindness by the Salvadoran government. Indeed, the record shows that the Salvadoran police worked with Petitioner to arrest one of his kidnappers. *Cf. Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (affirming BIA's denial of CAT relief where the government provided "information and financial assistance to prevent torture"). Thus, we affirm the BIA's denial of

CAT relief because a reasonable adjudicator would not "be compelled to conclude to the contrary." *Nasrallah*, 140 S. Ct. at 1692.

Entered for the Court


Mary Beck Briscoe
Circuit Judge